Esther v. REIGH, Ivery Mae Simpkins, David Michael Simpkins, and Lenora C. Dannie

v.

Charles L. SCHLEIGH, in his official capacity as Principal Clerk of the District Court for Washington County; Nancy E. Mueller, in her official capacity as Clerk of the District Court for Howard County; and William A. Dorsey, in his official capacity as Administrative Clerk of the District Court of Baltimore City.

Civ. A. No. M–83–245.

United States District Court, D. Maryland.

Oct. 29, 1984.

Elizabeth Renuart, Legal Aid Bureau, Inc., Frederick, Md., Julie Landau, Legal Aid Bureau, Inc., Ellicott City, Md., and Mark Davis, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen. of Md., and James G. Klair, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On January 24, 1983, the plaintiffs, Esther V. Reigh, Ivery Mae Simpkins, David Michael Simpkins, and Lenora C. Dannie, filed this suit against Charles L. Schleigh, in his official capacity as Principal Clerk of the District Court for Washington County; Nancy E. Mueller, in her official capacity

as Clerk of the District Court for Howard County; and William A. Dorsey, in his official capacity as Administrative Clerk of the District Court of Baltimore City. Plaintiffs allege that the defendants, in issuing orders of attachment pursuant to the post judgment procedures in Rules F1 through F5 of the Maryland District Rules, have deprived the plaintiffs of property without due process of law by failing (a) to cause a timely notice to be served upon the judgment debtor prior to, or immediately subsequent to, service of the Order of Attachment upon the garnishee; (b) to serve notice which would inform the judgment debtor of the available state and federal exemptions and the procedure whereby he or she can obtain a hearing to contest the attachment; and (c) to require a hearing within a specified number of days to resolve a contested attachment when requested by the judgment debtor. The plaintiffs prayed for a judgment declaring the then current Maryland District Rules governing post judgment attachment unconstitutional; the permanent enjoining of the issuance of post judgment orders for attachments by defendants until the Maryland District Rules are revised to require timely, adequate notice and timely opportunity for a hearing; an award of reasonable costs and attorney's fees; and such other and further relief as this court deems just and proper (Paper No. 2).

The defendants filed a Motion to Dismiss asserting that (1) no case or controversy existed, and (2) the plaintiffs had failed to state a claim upon which relief could be granted (Paper No. 9). Thereafter, with the consent of counsel for defendants, plaintiffs amended their complaint asserting as an additional cause of action, based on the same acts underlying the original complaint, a violation of the Supremacy Clause of the United States Constitution (Paper No. 12).

On May 6, 1983, the plaintiffs filed a Motion for Summary Judgment, incorporating their memorandum in support of their Opposition to the defendants' Motion to Dismiss and submitting affidavits of the plaintiffs (Paper Nos. 13–15, 22). The defendants filed a Cross Motion for Summary Judgment and a response to the plaintiffs' Motion for Summary Judgment on July 1, 1983 (Paper No. 18), in which they reasserted contentions made in their Motion to Dismiss and also asserted that (1) the rule changes sought by the plaintiffs were then under consideration for adoption by the Maryland Court of Appeals, mooting this case, and (2) that the Maryland District Rules, as then currently codified, did not violate the plaintiffs' due process rights or the Supremacy Clause of the United States Constitution. The plaintiffs filed a response to defendants' Cross Motion (Paper No. 19). A hearing was held on the motions on December 2, 1983.

I. *Factual Background*

A. *Plaintiff Reigh*

Plaintiff Esther Reigh is a seventy-year-old woman whose monthly income consists of $380.00 in Social Security and $43.14 from a pension from Fairchild Republic. Both checks are directly deposited into her account with the First National Bank of Maryland (FNB).

On September 23, 1981, the C & P Telephone Company obtained a judgment against plaintiff Reigh in the District Court for Washington County. On July 6, 1982, an Order of Attachment on Judgment was issued by an agent of the defendant Schleigh and, on July 7, 1982, was served on FNB. FNB immediately froze the plaintiff's bank account on the same day and also mailed her notice informing her that it had been served with a writ of attachment and enclosing a copy of the Order for Attachment. On July 13, 1982, FNB mailed the plaintiff a copy of the garnishee's Confession of Assets.

On or about July 15, 1982, plaintiff Reigh, acting *pro se,* asked the District Court in Washington County to exempt her account at FNB from attachment. Her request was granted on July 29, 1982.

Plaintiff Reigh continues to be a judgment debtor to the C & P Telephone Company (Paper No. 2, ¶¶ 11–15; Paper No. 15, Reigh Affidavit).

### B. *Plaintiffs Ivery Mae and David Simpkins*

Plaintiffs Ivery Mae and David Simpkins are mother and son. Ivery Mae Simpkins is 52 years old and disabled. Her sole source of monthly income is $421.50 from Social Security. Although married to a member of the merchant marine, she seldom receives any support from him and has received none from him since her bank account was attached in May of 1982. David Simpkins is 21 years old and attends Towson State University on a grant. His sole source of monthly income is $162.00 from Social Security.

On August 11, 1982, a judgment was entered in the District Court for Howard County against these plaintiffs in favor of the American Express Company. On October 7, 1982, an agent of the defendant Mueller issued an Order for Attachment on the plaintiffs' checking and savings accounts at Union Trust Company of Maryland (UT). The plaintiffs learned of the attachment on or about October 21, 1982 when they received copies of two letters from UT to the attorneys for UT which revealed that the plaintiffs had four bank accounts, two checking and two savings, containing $426.20 with UT. A Garnishee's Confession of Assets was served on the plaintiffs on October 27, 1982 by UT.

On November 5, 1982, through counsel, Ivery Mae and David Simpkins filed a claim of exemption with the District Court for Howard County. On December 6, 1982, the exemption was granted.

These plaintiffs continue to be judgment debtors to the American Express Company (Paper No. 2, ¶¶ 17–23; Paper No. 13, Simpkins Affidavit).

### C. *Lenora C. Dannie*

Plaintiff Lenora C. Dannie is 26 years old and lives with three dependent children. Her sole source of income is $355.00 a month from the Aid to Families with Dependent Children (AFDC) program.

On November 3, 1979, the Equitable Trust Bank obtained a judgment against the plaintiff and on December 13, 1982, an Order for Attachment was issued. On December 13, 1982, her checking account containing $24.11 from AFDC at FNB was frozen. On December 14, 1982, FNB mailed a letter to the plaintiff, informing her that they had received the Order for Attachment.

On December 17, 1982, a claim of exemption was filed with the District Court of Baltimore City. The exemption was granted on December 29, 1982.

Dannie continues to be a judgment debtor to the Equitable Trust Bank (Paper No. 2, ¶¶ 25–30; Paper No. 13, Dannie Affidavit).

### II. *Existence of a Case of Controversy*

The defendants assert that each plaintiff, who was subjected to the garnishment procedures outlined in Maryland District Rules, F1–F5, has since had the attachments quashed pursuant to Rule G51, Maryland District Rules. Therefore, since none of these plaintiffs have funds currently frozen under the Maryland Post Judgment Attachment statute, defendants contend there is no case or controversy in existence as required by Article III of the United States Constitution and that the case must be dismissed.

Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging a case or controversy, *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972); *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947 (1968); *Jenkins v. McKeithen*, 395 U.S. 411, 421–25, 89 S.Ct. 1843, 1848–51, 23 L.Ed.2d 404 (1969), for the courts are precluded from issuing advisory opinions, *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911), and may only decide questions that can affect the rights of litigants in the case before them. *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Plaintiffs must demonstrate a "personal stake in the outcome" in order to ensure that concrete adverseness which sharpens the presentations of the constitu-

tional issues to be resolved. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). A plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, policy or statute and that the injury or threat thereof is real and immediate, not conjectural or hypothetical. *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Golden v. Zwickler,* 394 U.S. 103, 109-10, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). An actual controversy must exist at all stages of review. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). The law, however, is not so rigid as to deny review in those instances in which the conclusion of the adjudication of the claims cannot occur before the facts underlying the claim must necessarily change. *See, e.g., Super Tire Engineering v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (strikes); *Storer v. Brown,* 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714 (1974) (state election laws); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (pregnancy).

In *Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) *(en banc),* the Third Circuit considered a motion to dismiss a lawsuit brought by plaintiff Finberg contesting the validity of Pennsylvania's post judgment garnishment proceedings. During the pendency of the state court garnishment proceedings, the plaintiff filed suit in federal court under 42 U.S.C. § 1983, asserting violations of the Due Process and Supremacy Clauses of the United States Constitution. Prior to the completion of the federal proceedings, and five months after initiating her claims of exemption in the state courts, the plaintiff recovered all of the money which had been attached. The defendants asserted that, because the plaintiff had had her money returned, she no

longer had a personal stake in the outcome, and the case should be dismissed as moot.

Judge Seitz, writing for the court, concluded that the case was one challenging "short term orders, capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), and, therefore, was not moot. He reasoned that the plaintiff had demonstrated a reasonable expectation that she would experience the reoccurrence of the activity:

"In the present case, Mrs. Finberg does have some reason to fear that she will suffer another attachment of her bank accounts. She remains a judgment debtor. As the record indicates that she is an elderly widow with a modest income, this judgment could remain unsatisfied for some time. Future efforts to execute the judgment are therefore likely. Sterling might repeat its attempt to garnish the accounts. For example, when new funds accumulate in the accounts, Sterling might find that the garnishment process is the most efficient way of determining whether any of the new funds are exempt. We also cannot disregard the possibility that a successor to Sterling's interest, such as a collection agency, could make such an attempt.

Furthermore, Mrs. Finberg's modest income and the difficulties that she had demonstrated in this case in meeting the demands of a creditor indicate that she may incur another money judgment and suffer an attempted garnishment to execute it."

*Finberg,* 634 F.2d at 55-56.

More recently, the Fourth Circuit has considered a similar challenge and concluded that the case was not moot. *Harris v. Bailey,* 675 F.2d 614 (4th Cir.1982). In *Harris,* the plaintiff, a Social Security recipient, brought an action under 42 U.S.C. § 1983, alleging that the Virginia garnishment procedure violated the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 407, exempting paid Social Security benefits from garnishment procedures. The district court dismissed her

suit when her monies were returned prior to its adjudication. The Fourth Circuit reversed.

Judge Ervin, speaking for the panel, found the *Harris* facts to be similar to those of a previous case before the Court of Appeals for the Fourth Circuit, *Hammond v. Powell*, 462 F.2d 1053 (4th Cir. 1972). In *Hammond*, the plaintiff had challenged a South Carolina repossession statute on due process and equal protection grounds. Although the state repossession action was concluded before the federal case had been tried, the Fourth Circuit, after noting that "due to her poverty, appellant will likely again be subjected to the challenged statutory procedure," *id.* at 1055, and that the public interest was substantial, concluded that the case was not moot.

In *Harris*, after concluding that the procedure there involved, like that of *Hammond*, was of brief duration but one that is capable of repetition, yet evading review, and finding the reasoning in *Finberg* to be persuasive, the Fourth Circuit held that the general rule, which denies judicial review when the principal cause becomes moot, did not apply. *See Roe*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

In the present case, the defendants point out that each of the above-discussed cases involved federal suits filed before the controversy had been settled and that the "capable of repetition" exception was used by those courts to conclude that the prior controversy was not mooted by the change in the plaintiffs' circumstances. In contrast, this case involves plaintiffs who filed suit after the Orders for Attachment had been quashed in state proceedings, a situation which defendants contend means that there has never existed a case or controversy in this suit.

The plaintiffs contend that the "capable of repetition" exception should apply to cases in which the plaintiffs reasonably expect to be subject to the challenged procedures in the future, regardless of whether they are suffering actual injury at the time they file suit in federal court.

In the Supreme Court's most recent case on the subject, it concluded that the district court was without jurisdiction to entertain a plaintiff's claim for injunctive relief due to the failure to satisfy the "case or controversy" requirement of Article III. *Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675. The Court's conclusion that the plaintiff had no standing to challenge the Los Angeles police department's chokehold policy was based on the Court's determination that the nature of his claim was speculative in that it was unlikely that the plaintiff would suffer future injury from the use of chokeholds by police officers. For the same reason, the "capable of repetition" doctrine was held not to apply.

In reaching this conclusion, the Supreme Court reiterated the observations it had made in earlier cases. In *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), particular members of the plaintiff class alleging the discriminatory enforcement of criminal law by state officials had actually suffered from the alleged unconstitutional practices. The Court observed that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing present adverse effects," although past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." *Id.* at 495–96, 94 S.Ct. at 676. Since it was to be assumed that the plaintiffs in *O'Shea* would conduct themselves in a lawful manner, the possibility of threatened injury from the practice sought to be stopped was remote and a case or controversy did not therefore exist. *See also Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Golden*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113.

In an earlier case, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), although the issue was not raised by either party, the Supreme Court examined the standing of all appellees to determine whether the case or controversy requirement associated with Article III of the

United States Constitution had been met, thereby entitling the appellees to an opportunity to seek the injunction requested. The appellees sought to challenge the constitutionality of New York statutes authorizing a finding of contempt against judgment debtors. All but two of the appellees had, at the time the lawsuit commenced, already been imprisoned and released after payment of the court imposed fine. *Id.* at 331–32. Because the periods of incarceration had been served, the underlying judgment satisfied, or the fines paid by some of the appellees, the effect of the orders imposing those fines no longer existed. The Supreme Court concluded that no case or controversy existed as to those appellees.

In reviewing the facts as to each of the appellees in *Juidice v. Vail,* the Court indicated that "the prospect of further contempt orders in the underlying action could have given Vail [the one appellee who had not satisfied the underlying judgment in addition to the court imposed fine for contempt] the requisite constitutional standing to seek to enjoin the contempt processes as unconstitutional." *Id.* at 333 n. 9, 97 S.Ct. at 1216 n. 9. Although the claims of this appellee were also dismissed because the complaint did "not allege the likelihood, or even the possibility, of future contempt orders," *id.,* the Supreme Court indicated that standing may be present, under a pleading making appropriate allegations, despite the absence of pending state proceedings at the time the suit in federal court is commenced challenging those proceedings.

■ Article III's requirement of the existence of a case or controversy is met by a demonstration of an injury or the threat of injury. *Baker,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. The question of standing, whether at the outset or after litiga-

tion has begun, is the same: is there an injury or a threat of injury? The "capable of repetition" exception to the mootness doctrine is the label applied to a court's determination that there continues to be a threat of injury so that standing still exists. As the Supreme Court opinions in *Vail v. O'Shea, Lyons,* and *Baker* reveal, a threat of injury, if real, is sufficient to fulfill Article III's requirement of the existence of a case or controversy at the outset of the federal litigation. *See Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).[1] The threat of injury was not present in *O'Shea, Lyons,* and *Golden* because the facts of those cases revealed that future injuries from challenged conduct were possibilities which were too speculative to ensure the "concrete adverseness" necessary for proper resolution of constitutional issues. *Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675. In *Vail,* the appellee's complaint did not even allege a future injury. The facts which gave rise to those determinations of speculative injury are vastly different from the situation in the present case.

■ Although no longer suffering present injury from the challenged conduct, the plaintiffs in the case *sub judice,* like the one appellee in *Vail,* continue to be indebted on the underlying debts and have no assurance or indication that their present creditors will not again attempt collection of the debts. The plaintiffs in this case, in contrast to the *Vail* appellee, have alleged in their complaint and affidavits[2] that their underlying judgment debts continue. They further alleged that, because of their poverty, all may be subjected

**1.** In *Kolender,* the Supreme Court examined the constitutionality of a criminal statute which required persons who loiter or wander on the street to provide a "credible and reliable" identification and to account for their presence when so requested by a peace officer. Although the appellee, Lawson, had been detained or arrested on approximately 15 occasions, he was not being detained at the time he brought his civil action challenging the validity of the statute.

The Court noted that the appellants had never challenged Lawson's standing to seek relief but went on to conclude that, in view of the number of previous stops, there was "a 'credible threat' that Lawson might be detained again" and, therefore, found the existence of a case or controversy. 461 U.S. 352, ——, n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903.

**2.** *See* Paper Nos. 13 (Simpkins and Dannie Affi-

to repeated attachment of their bank accounts.[3]

As the Supreme Court in *Vail* indicated, and the Fourth and Third Circuits in *Harris* and *Finberg* recognized, a plaintiff's poverty and continued status as a judgment debtor make very real the threat of injury from procedures designed to permit collection of a debt. Unlike the *Lyons, O'Shea,* or *Ashcroft* cases, where the facts indicated reoccurrence of the injury was unlikely, here the plaintiffs, because of their poverty, will probably be injured again by the challenged procedures due to the actions of present or future creditors. For these reasons, the court concludes that

these plaintiffs have standing to challenge Maryland's District Rules permitting post judgment orders of attachment to be issued. *See Grimes v. Miller,* 429 F.Supp. 1350, 1354 (M.D.N.C.1977).[4]

### III. *The Maryland District Rules*

In Maryland, the procedural rules for the governance of the District Courts of Maryland at the time this suit was filed were separately codified as the Maryland District Rules, Chapters 1, 100–700, 1100–1300. Chapter 100, Subtitles G & F contained the herein challenged procedures to be followed by a judgment creditor seeking to obtain an attachment on a judgment.[5]

---

davits), 15 (Reigh Affidavit).

**3.** The Second Amended Complaint of the plaintiffs reads in pertinent part:
"a. Because of the fact that they are judgment debtors and because of their poverty, all Plaintiffs may again be subjected to an attachment of their bank accounts or other personal property under the procedures in question. b. The Plaintiffs' federal constitutional claims could not have been fully litigated in federal court before the state court proceedings ended and their bank accounts were released."
Paper No. 20.

**4.** In *Grimes,* the District Court concluded that a case or controversy existed when the plaintiff did not file suit challenging the constitutionality of the North Carolina postjudgment body execution statute until after he had been released from imprisonment.

**5.** The challenged rules provided as follows:
*Rule F1. Service—Subsequent Procedure.*
Where an attachment on a judgment shall have been issued pursuant to this Subtitle, it shall be served pursuant to M.D.R. (G47) (Service of Writ—Garnishment) but no trial date shall be assigned at the time of issuing the writ. The procedure shall conform to the provisions of Section d of M.D.R. (G42) (Documents to Be Filed—Instructions to the Sheriff) and M.D.R. (G51) (Motion to Quash), M.D.R. (G52) (Appearance of Garnishee), M.D.R. (G56) (Interrogatories to Garnishee—Notice—Failure to Answer), M.D.R. (G57) (Dissolution of Attachment), M.D.R. (G58) (Claimant of Property Attached), and M.D.R. (G60) (Sale of Attached Property).
*Rule F2. Appearance—Assignment for Trial.*
a. *Nulla Bona—Request for Hearing—Dismissal.*
When a garnishee files a plea of *nulla bona* or a claim of total exemption, the plaintiff, within thirty days of the service of a copy of the plea or claim upon him, shall either dismiss the action or file a request for hearing. In the latter event the action shall be assigned for trial. In the

absence of dismissal or request the court may assign the action for trial or dismiss the action without trial.
b. *Other Appearances—Trial Date.*
If a defendant, garnishee or claimant files an initial pleading, other than a plea of *nulla bona* or a claim of total exemption, the action shall be assigned for trial.
*Rule F3. Default—Judgment of Condemnation Absolute.*
If no defendant, garnishee, or claimant of the property attached by way of garnishment shall file his initial pleading within thirty days after service of the writ, the plaintiff may pursuant to M.D.R. 648 (Default) prove the amount of assets of the defendant in the hands of the garnishee subject to attachment; thereupon, judgment of condemnation absolute shall be entered against the garnishee.
*Rule F4. Confession of Assets—Judgment of Condemnation Absolute.*
Upon the filing of a confession of assets by the garnishee, the court may enter a judgment of condemnation absolute for the assets confessed, provided, however, that no claimant files his initial pleading within thirty days after service of the writ.
*Rule F5. Execution.*
The court may award execution upon a judgment of condemnation absolute at any time.
M.D.R. F6 concerned the post judgment garnishment of wages and is not relevant to the question presently before the court.
The following rules were incorporated into the post judgment garnishment procedures:
*Rule G42. Documents to Be Filed.*
d. *Instructions to the Sheriff.*
Instructions to the sheriff as to the description and location of the property of the defendant to be attached.
*Rule G47. Service of Writ—Garnishment.*
a. *Service on Garnishee.*
A writ of attachment by way of garnishment may be served upon a person having property or credits belonging to the defendant.

Under the challenged Maryland District Court garnishment rules in existence at the time this suit was instituted, in order for a writ of attachment by way of garnishment to issue the judgment creditor filed instructions to the sheriff as to the description and location of the debtor's property to be attached. M.D.R. F1, G42d. The writ was then served on the garnishee, the person having property or credits belonging to the defendant. M.D.R. F1, G47a. The writ of attachment was required to notify each person upon whom it was served, i.e., the garnishee(s), to file in writing a defense, G52, within thirty days after service of the writ. If a claim of total exemption was filed by the garnishee, the creditor, within thirty days, must have either dismissed or requested a hearing. If a hearing was requested, the matter was set for trial. M.D.R. F2. If some other initial pleading by the garnishee or the debtor was filed, the case was also set for trial. M.D.R. F2b.

b. *Notice to Garnishee.*
A writ of attachment by way of garnishment shall comply substantially with section e of M.D.R. 103 (Process—Issuance—Return) and shall notify each person upon whom it is served to file in writing a defense pursuant to M.D.R. (G52) (Appearance of Garnishee) within thirty days after service of the writ, showing cause why the property or credits so attached should not be condemned.
*Rule G51. Motion to Quash.*
a. *Procedure.*
A defendant or garnishee may file a motion within thirty days after service of the writ praying that the writ be quashed and set aside, and thereupon the court may order the sheriff to produce the writ and the proceedings thereunder in court.
b. *Hearing.*
The court shall upon notice to the adverse party hear the motion to quash forthwith.
c. *Effect of Motion to Quash Upon Attachment.*
The motion to quash shall not prevent further proceedings until the court shall order the writ of attachment quashed.
d. *Attachment Quashed—Stay by Filing Bond.*
If the writ of attachment is quashed and an appeal is taken, the writ of attachment shall remain in force pending the decision on appeal, provided that within 10 days of the decision by the court a bond shall be given conditioned upon the prosecution of such appeal with effect, or in

Alternatively, the judgment debtor could obtain the dissolution of the writ by giving a bond in an amount equal to the attached property. M.D.R. F1, G57.

A final alternative under the former rules was for the garnishee or the debtor to file a motion to quash the writ. Such a motion must have been filed within thirty days of the service of the writ on the garnishee. M.D.R. F1, G51a. The court then, upon notice to the creditor, was required to hear the motion to quash "forthwith." M.D.R. F1, G51(b). The writ of attachment by way of garnishment remained in effect until it was quashed. M.D.R. F1, G51c.

If no defense was filed within the thirty-day period after service of the writ, the judgment creditor could prove the amount of the debtor's assets in the hands of the garnishee, and a Judgment of Condemnation Absolute would thereupon be entered against the garnishee. M.D.R. F3. If the

default thereof to pay such costs and damages as the defendant or other person interested in such property or credits may incur or suffer by reason of such attachment and appeal. The amount of and the surety on such bond shall be determined and approved by the court.
*Rule G52. Appearance of Garnishee.*
a. *Pleas.*
The garnishee may file a pleading asserting on behalf of the defendant any defense which the defendant could assert, and also any defense on his own behalf.
b. *Confession of Assets—Payment Into Court.*
The garnishee may confess such assets including money, as he has in his hands, and may pay into court the money in his hands to be awarded to the party having a legal right thereto.
c. *Confession of Assets—Proceedings.*
If the plaintiff shall claim a larger amount than the assets confessed, the garnishee shall be allowed the costs of the action and an attorney's fee to be fixed by the court, unless the plaintiff shall recover judgment against the garnishee in excess of the assets confessed.
d. *Plea of Nulla Bona.*
If upon a plea of *nulla bona* contested by the attaching creditor, judgment shall be entered for the garnishee, the plaintiff shall be adjudged to pay to the garnishee an attorney's fee to be fixed by the court and the costs of the action.
The remaining six Rules, formerly incorporated by reference into the post judgment proceedings, do not concern the issues presented in the present case.

garnishee filed a Confession of Assets, the court could enter a Judgment of Condemnation Absolute. M.D.R. F4. Execution of Judgments of Condemnation Absolute could be awarded by the court at any time. M.D.R. F5.

At the December 2, 1983 hearing, this court observed that on October 21, 1983, the Maryland Court of Appeals had ordered the adoption of amendments to the Maryland District Rules, Chapter 1100, Subtitle G and Subtitle F. These changes were subsequently printed in the Maryland Register. Md.Admin.Reg. Vol. 10, Issue 23 (Nov. 11, 1983).[6] The majority of these changes dealt with amendments to the G Rules, the statutory procedures governing

**6.** The Maryland District Rules regarding post judgment garnishment procedures are set forth below as amended by the October 21, 1983 Order of the Maryland Court of Appeals. The matter contained in the brackets is deleted from the former Maryland District Rules. The matter which is underlined is any new material added by the October 21, 1983 amendments:

CHAPTER 1100—SPECIAL PROCEEDINGS
SUBTITLE F—ATTACHMENT ON JUDGMENT—PROCEDURE
AMEND Rule F1 to correct the rule references, as follows:

M.D.R. F1. Service—Subsequent Procedure.

Where an attachment on a judgment shall have been issued pursuant to this Subtitle, it shall be served pursuant to M.D.R. G[47]*50* (Service of Writ—Garnishment) but no trial date shall be assigned at the time of issuing the writ. The procedure shall conform to the provisions of [Section d] *subsection b 4* of M.D.R. G[42]*40* (Documents to Be Filed—Instructions to the Sheriff) and M.D.R. G51 [ (Motion to Quash) ] *(Release of Property—Dissolution of Attachment)*, M.D.R. G52 (Appearance of Garnishee), M.D.R. G56 (Interrogatories to Garnishee—Notice—Failure to Answer), [M.D.R. G57 (Dissolution of Attachment),] M.D.R. G58 (Claimant of Property Attached), and M.D.R. G60 (Sale of Attached Property).

The amended G Rules referenced in F1 of the M.D.R. post garnishment procedures are set forth below:

M.D.R. G40. [Against Whom] *When Available* —[M.D.R. G42.] *Documents To Be filed*

*a. Availability*

An attachment on original process *or while an action is pending* may issue against any property or credits, whether matured or unmatured, belonging to the debtor upon the application of [any person who has the right to become] a plaintiff [in an action in this State in any of the following instances:] *who is entitled by statute to attachment before judgment.*

[a. Nonresident Debtor.

Where the debtor is a nonresident individual or if a corporation, where the corporation does not have a resident agent.

b. Resident Defendant Evading Service.

Where a resident individual defendant or an agent authorized to accept process for a corporation has acted to evade service.

c. Absconding Debtor.

Where the debtor has absconded or is about to abscond from this State, or if an individual has removed, or is about to remove, from his place of abode in this State with intent to defraud his creditors.

d. Fraud.

Where the debtor is about to assign, dispose of, conceal or remove his property or some portion thereof from the State with intent to defraud his creditors, or where such debtor has done any of such acts or fraudulently contracted the debt or incurred the obligation respecting which the action is brought.

e. Nonresident Heir and Devisee.

Where an adult nonresident is entitled by descent or devise to any land or tenement lying within this State, and the person from whom such land or tenement descended or by whom the same were devised was indebted to any person, an attachment may issue against the land or tenement held by descent or devise from the person so indebted.] Cross Reference: Code, Courts Article, §§ 3–302, 3–303, 3–304, 3–305.

*b. Documents to be Filed.*

Attachment proceedings shall be commenced by filing with the clerk the following:

[a]*1.* [Statement of Claim] *Request for Writ.*

A [Statement of the plaintiff's claim] *request for an order directing the issuance of a writ of attachment.*

[b]*2.* Affidavit

An affidavit by the plaintiff or by some person on the plaintiff's behalf, setting forth facts upon which plaintiff claims he is entitled to the issuance of attachment [on original process] on one or more of the grounds in [M.D.R. G40 (Against Whom Available) ] *Code, Courts Article, § 3–303,* and except in an action for unliquidated damages, that the debtor is bona fide indebted to the plaintiff in the amount claimed. In an action for unliquidated damages the facts recited in the statement of claim shall be verified by the plaintiff or someone on his behalf.

[c]*3.* *Statement of Claim and* Documentary Evidence of Claim. *When attachment on original process is requested, a statement of the plaintiff's claim and* either the original, or sworn, certified or photostatic copies of all material papers or parts thereof which constitute the basis of the claim, unless the absence thereof is explained in the affidavit.

[d]*4.* Instructions to the Sheriff.

Instructions to the sheriff as to the description and location of the property of the defendant to be attached.

[e. Bond—When Necessary—Amount.

In an attachment on original process for fraud under section d of M.D.R. G40 (Against Whom Available), and in an action ex contractu

attachment before judgment. Because, however, the post judgment garnishment procedures contained in Subtitle F incorporate by reference some of the G Rule procedures, Rule F1 was amended to incorporate the changes in the G Rule references.

The only substantive change, as of October 21, 1983, in the post judgment garnish-

for unliquidated damages, and in an action ex delicto under sections a and c of M.D.R. G40 (Against Whom Available), a bond to the State shall be filed with such surety as may be approved by the clerk and conditioned upon the satisfaction of costs and such damages as may be awarded to such defendant or a claimant of the property attached. The amount of the bond shall be the sum alleged to be due from the defendant.]

M.D.R. G[47] *50.* Service of Writ—Garnishment.

a. Service on Garnishee.

A writ of attachment by way of garnishment may be served upon a person having property or credits belonging to the defendant.

b. Notice to Garnishee.

A writ of attachment by way of garnishment shall comply substantially with section e of M.D.R. 103 (Process—Issuance—Return) and shall notify each person upon whom it is served to file in writing a defense pursuant to M.D.R. G52 (Appearance of Garnishee) within thirty days after service of the writ, showing cause why the property or credits so attached should not be condemned.

M.D.R. G51. Motion to Quash.

a. Procedure.

A defendant or garnishee may file a motion within thirty days after service of the writ praying that the writ be quashed and set aside and thereupon the court may order the sheriff to produce the writ and the proceedings thereunder in court.

b. Hearing.

The court shall upon notice to the adverse party hear the motion to quash forthwith.

c. Effect of Motion to Quash Upon Attachment.

The motion to quash shall not prevent further proceedings until the court shall order the writ of attachment quashed.

d. Attachment Quashed—Stay by Filing Bond.

If the writ of attachment is quashed and an appeal is taken, the writ of attachment shall remain in force pending the decision on appeal, provided that within 10 days of the decision by the trial court a bond shall be given conditioned upon the prosecution of such appeal with effect, or in default thereof to pay such costs and damages as the defendant or other person interested in such property or credits may incur or suffer by reason of such attachment and appeal. The amount of and the surety on such bond shall be determined by the court.]

M.D.R. G[57] *51.* Release of Property—Dissolution of Attachment.

A defendant who has appeared may [dissolve an attachment] *obtain release of the attached property* by giving bond in an amount equal to the value of the property as determined by the court, or in the amount of the plaintiff's claim, whichever is less, with such surety as may be approved by the clerk to satisfy any judgment that may be recovered.

*Upon motion of a defendant who has appeared, the court may release some or all of the attached property if it finds that (1) the claim has been dismissed or settled, (2) the plaintiff has failed to comply with the provisions of this Rule or an order of court regarding these proceedings, (3) property of sufficient value to satisfy the claim and probable costs will remain subject to the attachment after the release, or (4) the attachment of the specific property will cause undue hardship to the defendant and the defendant has delivered to the sheriff or made available for levy alternative property sufficient in value to satisfy the claim and probable costs.*

*Upon motion of a defendant or garnishee, the court may release some or all of the attached property on the ground that the property is exempt or it may dissolve the attachment on the ground that the plaintiff is not entitled to attachment before judgment. If the motion is filed before the defendant's Notice of Intention to Defend is due pursuant to M.D.R. 302, its filing shall be treated as an appearance for that purpose only.*

*A party desiring a hearing on a motion filed pursuant to this section shall so request in the motion or response and, if requested, a hearing shall be held promptly.*

M.D.R. G56. Interrogatories to Garnishee—Notice—Failure to Answer.

Interrogatories may be served by the plaintiff upon the garnishee pursuant to M.D.R. 417 (Discovery by Interrogatories to Party). They shall contain a notice to the garnishee that, unless answers are filed within thirty (30) days after service of the interrogatories [judgment may be entered against him in the full amount of the plaintiff's claim] *the garnishee may be held in contempt of court.* If a garnishee shall fail to answer interrogatories, within the time allowed by section b of Rule 417 (Discovery by Interrogatories to Party), then upon proof of service of the interrogatories the court on motion [and notice] may enter [a judgment against the garnishee for the full amount of the plaintiff's claim] *an order in compliance with Rule P4 treating the failure to answer as a contempt and may require the garnishee to pay reasonable attorney's fees and costs.*

ment procedures which are challenged in this suit is the change in Rule G51. The former Rule G51, providing the procedure for filing a motion to quash the writ, was deleted to accommodate the adoption of a new Rule G51, a comprehensive rule covering release of property and dissolution of attachment. The specific change in the procedures challenged by the plaintiffs and contained in the new Rule G51, as of October 21, 1983, was that now a hearing on a motion to release property or to dissolve the attachment pursuant to Rule G51 must be requested by a party, and once requested, the hearing shall be held "promptly," rather than "forthwith," as required by the former Rule G51(b). The remaining procedures or lack thereof challenged by the plaintiffs remained unchanged in the October 21, 1983 change in the rules.

## IV. *Latest Changes in the Maryland District Rules*

In their motions before this court, the defendants asserted that the changes in the Maryland District Rules that the plaintiffs sought were then currently under consider-

**7.** The pertinent proposed rules submitted by the Rules Committee are set forth below:
Rule 3–311. MOTIONS
  (a) Generally
  An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, and shall set forth the relief or order sought.
  (b) Statement of Grounds
  A written motion and any response to a motion shall state with particularity the grounds.
  (c) Hearing—Motions for New Trial or to Amend the Judgment
  When a motion is filed pursuant to Rule 3–533 or 3–534, the court shall determine in each case whether a hearing will be held, but it may not grant the motion without a hearing.
  (d) Hearing—Other Motions
  A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 3–533 or 3–534, shall file a timely written request. The request of the moving party shall be included in the motion under the heading "Request for Hearing," and the request of a party served with a motion shall be made by filing a "Request for Hearing" within five days after service. Upon a timely request, a hearing shall be held except as provided in Rule 3–421(g). The court may hear and decide the motion before or at trial. If no hearing is requested, the court may decide the motion without a hearing at any time.

ation and were expected to be put into effect in the next several months after the December, 1983 hearing. The defendants referred to the Tentative Draft of the Revised Maryland Rules of Procedure, published in November, 1982, by the Rules Committee of the Judiciary of Maryland. (Preface, Tentative Draft).

As the plaintiffs accurately pointed out, the proposed rules contained in the Tentative Draft revised only the procedures of the Circuit Courts of Maryland and did not affect or attempt to alter the District Rules which contain the procedures challenged in the present case.

At the December 2, 1983 hearing, however, the defendants submitted to the court a copy of the proposed Eighty-Eighth Report of the Standing Committee on Rules of Practice & Procedure. In that report, which was later submitted to the Court of Appeals on December 9, 1983, the Rules Committee proposed amendments to the Maryland District Rules. (Defendants' Exhibit No. 4). Md.Admin.Reg.Vol. 10, Issue 25 (Dec. 9, 1983). Three specific proposed rules were called to the court's attention, 3–311, 3–643, and 3–645.[7]

Rule 3–643. RELEASE OF PROPERTY FROM LEVY
  (a) Upon Satisfaction of Judgment
  Property is released from a levy when the judgment has been entered as satisfied and the costs of the enforcement proceedings have been paid.
  (b) Upon Posting Bond
  The judgment debtor may also obtain release of property from a levy by filing a bond in an amount sufficient to satisfy the judgment and enforcement costs.
  (c) Upon Motion of Judgment Debtor
  Upon motion of the judgment debtor, the court may release some or all of the property from a levy if it finds that (1) the judgment has been vacated, has expired, or has been satisfied, (2) the property is exempt from levy, (3) the judgment creditor has failed to comply with these rules or an order of court regarding the enforcement proceedings, (4) property sufficient in value to satisfy the judgment and enforcement costs will remain under the levy after the release, (5) the levy upon the specific property will cause undue hardship to the judgment debtor and the judgment debtor has delivered to the sheriff or made available for levy alternative property sufficient in value to satisfy the judgment and enforcement costs, or (6) the levy has existed for 120 days without sale of the property, unless the court for good cause extends the time.

Note 7—Continued

The motion and any response to the motion may be accompanied by a request for court review of the sheriff's appraisal made at the time of the levy.

(d) Upon Election of Exemption by Judgment Debtor

By motion filed within 30 days after a levy, the judgment debtor may elect to exempt from execution of the judgment selected items of property or cash not exceeding in amount the cumulative value permitted by law. The motion and any response to the motion may be accompanied by a request for court review of the sheriff's appraisal made at the time of the levy. The court shall release from the levy items of cash or property selected by the debtor to the extent required by law.

(e) Upon Claim of a Third Person

A person other than the judgment debtor who claims an interest in property under levy may file a motion requesting that the property be released. The motion shall be served on the judgment creditor and, if reasonably feasible, on the judgment debtor. If the judgment debtor is not served and does not voluntarily appear, the claimant shall file an affidavit showing that reasonable efforts have been made to ascertain the whereabouts of the judgment debtor and to provide the judgment debtor with notice of the motion. The court may require further attempts to notify the judgment debtor. The judgment creditor or the judgment debtor may file a response to the motion.

Rule 3–645. GARNISHMENT OF PROPERTY—GENERALLY

(a) Availability

This Rule governs garnishment of any property of the judgment debtor, other than wages [subject to Rule 3–646] and a partnership interest subject to a charging order, in the hands of a third person for the purpose of satisfying a money judgment. Property includes any debt owed to the judgment debtor, whether immediately payable, unmatured, or contingent.

(b) Issuance of Writ

The judgment creditor may obtain issuance of a writ of garnishment by filing in the same action in which the judgment was entered a request that contains (1) the caption of the case, (2) the amount owed under the judgment, (3) the name and last known address of the judgment debtor, and (4) the name and address of the garnishee. Upon the filing of the request, the clerk shall issue a writ of garnishment directed to the garnishee.

(c) Content

The writ of garnishment shall:

(1) contain the information in the request, the name and address of the person requesting the writ, and the date of issue,

(2) direct the garnishee to hold the property of the judgment debtor subject to further proceedings,

(3) notify the garnishee of the time within which the answer must be filed and that failure to do so may result in judgment by default against the garnishee,

(4) notify the judgment debtor and garnishee that federal and state exemptions may be available,

(5) notify the judgment debtor of the right to contest the garnishment by filing a motion asserting a defense or objection.

(d) Service

The writ shall be served on the garnishee in the manner provided by Chapter 100 of this Title for service of process to obtain personal jurisdiction and may be served in or outside the county. Promptly after service upon the garnishee, the person making service shall mail a copy of the writ to the judgment debtor's last known address. Proof of service and mailing shall be filed as provided in Rule 3–126. Subsequent pleadings and papers shall be served on the creditor, debtor, and garnishee in the manner provided by Rule 1–321.

(e) Answer of Garnishee

The garnishee shall file an answer within 30 days after service of the writ. The answer shall admit or deny that the garnishee is indebted to the judgment debtor or has possession of property of the judgment debtor and shall specify the amount and nature of any debt and describe any property. The garnishee may assert any defense that the garnishee may have to the garnishment, as well as any defense that the judgment debtor could assert. After answering, the garnishee may pay any garnished indebtedness into court and may deliver to the sheriff any garnished property, which shall then be treated as if levied upon by the sheriff.

(f) When No Answer Filed

If the garnishee fails to file a timely answer, the judgment creditor may proceed pursuant to Rule 3–509 for a judgment by default against the garnishee.

(g) When Answer Filed

If the garnishee files a timely answer, the matters set forth in the answer shall be treated as established for the purpose of the garnishment proceeding unless the judgment creditor files a reply contesting the answer within 30 days after its filing. If a timely reply is not filed, the court may enter judgment upon request of the judgment creditor, the judgment debtor, or the garnishee. If a timely reply is filed to the answer of the garnishee, the matter shall proceed as if it were an original action between the judgment creditor as plaintiff and the garnishee as defendant and shall be governed by the rules applicable to civil actions.

(h) Interrogatories to Garnishee

The judgment creditor may file interrogatories directed to the garnishee pursuant to Rule 3–421. The interrogatories shall contain a notice to the garnishee that, unless answers are filed within 30 days after their service or within the time for filing an answer to the writ, whichever is later, the garnishee may be held in contempt of court. If the garnishee fails to file timely answers to interrogatories, the court, upon motion of the judgment creditor and proof of service of the interrogatories, may enter an order in compliance with Rule P4 treating the

1548

These proposed changes to the Maryland District Rules [8] were later adopted by the Maryland Court of Appeals on April 6, 1984, effective July 1, 1984. Md.Admin. Reg.Vol. 11, Issue 9 (Apr. 27, 1984).

The new Maryland District Rules provide that the judgment debtor will be mailed a copy of the writ at his last known address by the party serving that writ on the garnishee. The writ shall contain notice to the judgment debtor that federal and state exemptions may be available, and of his right to contest the garnishment by filing a motion asserting a defense or objection. M.D.R. 3–645. A motion for exemption filed by the judgment debtor must be filed within thirty days of service of the writ. M.D.R. 3–643. Finally, the new rules provide that a party desiring a hearing on a filed motion must file a timely request within five days of service of the motion. M.D.R. 3–311(d).

## V. *The Due Process Claims*

The plaintiffs assert that they have a property interest in their bank accounts, *North Georgia Finishing, Inc. v. Di-Chem*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Sniadach v. Family Finance Corp.* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), which were attached by the defendants under procedures set forth in former M.D.R. F1–F5. The defendants do not dispute the existence of the property interest. The issue is whether due process is provided by the Maryland District Rules as they now exist, and, if not, what process is due.

Almost sixty years ago, the Supreme Court addressed the issue of the process which is due in post judgment proceedings in *Endicott Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924). The judgment creditor, Endicott Johnson, brought suit to compel the judgment debtor's employer, the Encyclopedia Press, Inc., to pay over 10% of the debtor's wages each week to the creditor pursuant to a duly awarded execution by the Supreme Court of New York. The employer asserted that the New York Code authorizing such garnishment violated the debtor's right of due process under the Fourteenth Amendment because the execution was authorized without notice to the judgment debtor or without affording him an opportunity to be heard.

Justice Sanford, writing for the Court, upheld the *ex parte* application of the judgment creditor reasoning that,

> "in the absence of a statutory requirement, it is not essential that he [the debtor] be given notice before the issuance of an execution against his tangible property; after the judgment he must take 'notice of what will follow,' no further notice being necessary to advance justice.."

*Id.* at 288, 45 S.Ct. at 62.

Subsequent federal decisions applied the holding in *Endicott Johnson* and concluded that post garnishment statutes that did not provide notice to the debtor were constitutional and did not deprive the debtor of due process. *See, e.g., Halpern v. Austin*, 385 F.Supp. 1009 (N.D.Ga.1974); *Katz v. Ke Nam Kim*, 379 F.Supp. 65, 68–69 (D.Haw. 1974); *Langford v. State of Tennessee*, 356 F.Supp. 1163 (W.D.Tenn.1973) (*per curiam*); *Moya v. DeBaca*, 286 F.Supp. 606,

A judgment against the garnishee shall be limited to the property of the judgment debtor established by the judgment creditor to be in the hands of the garnishee or to the amount owed under the creditor's judgment against the debtor and enforcement costs, whichever is less.

failure to answer as a contempt and may require the garnishee to pay reasonable attorney's fees and costs.

(i) Release of Property; Claim by Third Person

Before entry of judgment, the judgment debtor may seek release of the garnished property in accordance with Rule 3–643, except that a motion under Rule 3–643(d) shall be filed within 30 days after service of the writ of garnishment on the garnishee. Before entry of judgment, a third person claimant of the garnished property may proceed in accordance with Rule 3–643(e).

(j) Judgment

**8.** Proposed Maryland District Rule 3–643, as adopted on April 6, 1984, added a subsection (f) which provides:

> "Hearing.—A party desiring a hearing on a motion filed pursuant to this Rule shall so request pursuant to Rule 3–311(d) and, if requested, a hearing shall be held promptly."

607–08 (D.N.M.1968), *appeal dismissed,* 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969). *See also Wanex v. Provident State Bank of Preston,* 53 Md.App. 409, 454 A.2d 381 (1983) (*per curiam*) (citing *Endicott Johnson* with approval, but simply holding that the Maryland rules as then currently codified did not require notice to the debtor before garnishment).

The continuing applicability of *Endicott Johnson* to the more recent cases, which involve the garnishment of bank accounts which may contain exempt property, is questionable in light of the fact that the Court in *Endicott Johnson* did not consider any possibility that the judgment debtor might be deprived of exempt property. This issue, which does not arise until the judgment creditor seeks to subject specific assets of the judgment debtor to satisfaction of the judgment, cannot be resolved in the underlying action. Furthermore, the New York statute, which was upheld in *Endicott Johnson,* authorized garnishment of only ten percent of a judgment debtor's wages and only that percentage was sought by the judgment creditor. In contrast, the garnishment of bank accounts may deprive the judgment debtor of his sole source of income when retirement or welfare benefits are directly deposited into those accounts. *See* M. Greenfield, *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions,* Wash.Univ.L.Q. 877, 887–88, 896–98 (1975).

Moreover, other courts have questioned the continuing validity of the *Endicott Johnson* holding in light of the Supreme Court's decision in *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). In *Griffin,* the plaintiff wife sought to enforce in the District of Columbia a 1938 New York judgment for support arrearages based on a 1926 New York alimony decree. The 1938 judgment was obtained in an *ex parte* proceeding without notice to the husband. A 1936 judgment for arrear-ages, the court proceedings having been attended by the husband, was also unsatisfied. *Id.* at 223, 66 S.Ct. at 558.

The Supreme Court held the 1938 judgment to be invalid to the extent it cut off any defenses the husband debtor might have raised with respect to arrearages accruing after 1936. The Court recognized the argument that the 1926 decree gave the husband notice that further proceedings might be taken which might result in a judgment on the obligation, but reasoned that there was "no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the 1926 decree did not." *Id.* at 229, 66 S.Ct. at 561.

While this rationale conflicts with that in *Endicott Johnson,* the fact that the Supreme Court did not refer in *Griffin* to that former decision has caused difficulty in determining what impact *Griffin* had. Courts have alternately refused to conclude that *Griffin* undercuts *Endicott Johnson, Brown v. Liberty Loan Corp. of Duval,* 539 F.2d 1355, 1363–65 (5th Cir.1976), questioned the continuing validity of the *Endicott Johnson* decision, *First Nat'l Bank v. Hasty,* 410 F.Supp. 482, 489 n. 8 (E.D.Mich. 1976); *Betts v. Tom,* 431 F.Supp. 1369, 1373 (D.Haw.1977), or have noted the contradiction but not relied on it in reaching their decision. *Phillips v. Robinson Jewelers,* No. 81–190–BT (W.D.Okla., Feb. 15, 1982). In a later dissent on the dismissal of a writ of certiorari as improvidently granted, at least some of the justices on the Supreme Court indicated that they believed that the *Endicott Johnson* rationale was no longer viable in light of *Griffin. Hanner v. DeMarcus,* 390 U.S. 736, 88 S.Ct. 1437, 20 L.Ed.2d 270 (1968).[9]

A series of recent Supreme Court cases concerning prejudgment deprivations reveal a shift in the Court's view of due

---

**9.** At least two early commentators on this subject suggest that *Endicott Johnson* may be questionable authority in light of *Moya* and *Hanner.* Countryman, *The Bill of Rights & the Bill Collector,* 15 Ariz.L.Rev. 521, 545 (1973); Levy, *Attachment, Garnishment and Garnishment Execution: Some American Problems Considered in Light of the English Experience,* 5 Conn.L.Rev. 399 (1973).

1550

process from that of the Court during the period when *Endicott Johnson* was decided. In 1969, the Supreme Court held unconstitutional in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), a Wisconsin prejudgment garnishment statute, which allowed a creditor to freeze the wages of a debtor in the hands of an employer pending the outcome of the action on the creditor's claim of indebtedness. The Court said that the garnishment of wages is such a severe deprivation that due process requires that it be preceded by notice to the debtor and an opportunity for a hearing. *Id.* at 340, 89 S.Ct. at 1822.

In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court struck down Florida and Pennsylvania prejudgment replevin statutes which did not require advance showing by the applicants that the chattels in question were wrongfully detained. The Court concluded that the failure to provide the debtor with prior notice and an opportunity to dispute the creditor's claim deprived the debtor of due process in that "a hearing must take place when deprivation can still be prevented." *Id.* at 81, 92 S.Ct. at 1994.

In the third recent prejudgment case before the Court, Justice White, writing for the majority, after balancing the interests of the parties, concluded that a Louisiana sequestration statute, which failed to provide prior notice and a hearing, was constitutional where other measures, such as a required creditor affidavit and the issuance of the writ by a judge, minimized the risk that the *ex parte* procedure would lead to a wrongful taking. *Mitchell v. W.T. Grant & Co.*, 416 U.S. 600, 616–17, 94 S.Ct. 1895, 1904–05, 40 L.Ed.2d 406 (1974).

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), Justice White, again writing for the majority, invalidated a Georgia prejudgment garnishment procedure which allowed the freezing of a corporation's bank account without either notice and a hearing before the freeze, or the alternate safeguards similar to those in *Mitchell.*

Following the prejudgment deprivation cases, the Supreme Court reviewed the concept of due process in an analogous context. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), when examining the process due a Social Security recipient prior to termination of her benefits, the Court observed that its former cases, including *Di-Chem, Sniadach*, and *Fuentes*,

" 'underscore the truism that "due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). 'Due Process is flexible and calls for such procedural protections as the particular situation demands.' *Morrissey v. Brewer*, 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] (1972).... Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett v. Kennedy, supra*, [416 U.S. 134], at 167–168 [94 S.Ct. 1633, 1650–1651, 40 L.Ed.2d 15] (Powell, J., concurring in part); *Goldberg v. Kelly, supra* [397 U.S. 254], at 263–266 [90 S.Ct. 1011, 1018–1019, 25 L.Ed.2d 287]; *Cafeteria Workers v. McElroy, supra* [367 U.S.], at 895 [81 S.Ct. at 1748]. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors; first, the private interest that will be affected by the official actions; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See*,

e.g., *Goldberg v. Kelly, supra,* [367 U.S.] at 263–271. [90 S.Ct. at 1018–1022]." *Mathews,* at 334–35, 96 S.Ct. at 902–03.

In contrast to the categorical analysis of *Endicott Johnson,* the balancing of interest approach to due process, first recognized in the creditor-debtor situation in *Mitchell,* and distilled in *Mathews,* has been applied by courts and commentators [10] analyzing post judgment garnishment and execution procedures. *See Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (*en banc*); *Brown v. Liberty Loan Corp. of Duval,* 539 F.2d 1355 (5th Cir.1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977); *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178 (S.D.N.Y.1982); *Betts v. Tom,* 431 F.Supp. 1369 (D.Haw.1977); *First Nat'l Bank v. Hasty,* 410 F.Supp. 482 (E.D.Mi.1976); *Harris v. Bailey,* 574

F.Supp. 966 (W.D.Va.1983); *Phillips v. Robinson Jewelers,* No. 81–190–BT (W.D. Okla., Feb. 16, 1982); *Simler v. Jennings,* 23 O.Op.3d 554 (S.D.Ohio 1982).

In *Finberg,* 634 F.2d 50, the Third Circuit concluded that the Pennsylvania restraint and enforcement procedures, which resulted in freezing the plaintiff's bank account, failed to provide notice and a prompt post seizure hearing, denied the judgment debtor due process of law, and violated the Supremacy Clause of the United States Constitution. *Id.* at 59–63. Notice was insufficient because it failed to inform the judgment debtor of the exemptions which might have been available or the procedures by which to assert an exemption. A prompt hearing was not available where the creditor had fifteen days to respond to an exemption petition before the debtor could request a hearing.[11]

**10.** *See* Note, *Due Process, Postjudgment Garnishment, and "Brutal Need" Exemptions,* Duke L.J. 192 (1982); Greenfield, *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions,* 1975 Wash.U.L.Q. 877; Note, *Due Process Requires Notice of Exemptions and a Prompt Post-seizure Hearing for Postjudgment Garnishment,* 46 Mo.L.Rev. 857 (1981); Note, *Pennsylvania's Postjudgment Garnishment Procedures Violate the Due Process and Supremacy Clauses,* 26 Vill.L.Rev. 579 (1980–81); Comment, *Postjudgment Wage Garnishment Procedure that Gives Debtor No Notice or Opportunity to Assert Statutory Exemption Prior to Garnishment is Unconstitutional,* 3 Fla.St.U.L.Rev. 626 (1975); Alderman, *Default Judgments & Postjudgment Remedies Meet the Constitution: Effectuating Sniadach and Its Progeny,* 65 Geo. L.J. 1 (1976); Dunham, *Post Judgment Seizures: Does Due Process Require Notice and Hearing,* 21 S.D.L.Rev. 79 (1976); Note, *A Due Process Analysis of New York's Postjudgment Garnishment Procedure,* 44 Alb.L.Rev. 849 (1980).

**11.** Similarly, in *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178 (S.D.N.Y.1982), the district court held that the failure to afford judgment debtors notice of and an opportunity to challenge New York's postjudgment enforcement procedures violated both due process and the Supremacy Clause, even though the enforcement procedures did include postseizure means for asserting exemptions. In particular, the *Deary* court required that the debtors be apprised of the exemptions available to them and the procedures by which such a claim could be asserted. *Id.* at 1187–88. *Compare Cole v. Goldberger, Pederson & Hochron,* 95 Misc.2d 720, 410 N.Y.S.2d 950 (Sup.Ct., Broome City 1978) (holding New York enforcement procedures unconstitutional because of a lack of notice) *with*

*Warren v. Delaney,* No. 1155318 (N.Y.Sup.Ct., Westchester Cty., June 11, 1981) (holding New York procedures constitutional on the basis of *Endicott Johnson* ).

In *Betts v. Tom,* 431 F.Supp. 1369 (D.Haw. 1977), the judgment creditor of the plaintiff had a garnishment summons issued to a local bank where the plaintiff maintained an account. The sole funds in the plaintiff's account were Hawaiian state welfare funds, exempt under Hawaiian law. The bank froze the plaintiff's funds for four weeks when she was successful in quashing the writ of garnishment. The Hawaii statute requires no affidavit from the judgment creditor that the property to be garnished is nonexempt and the writ will be furnished by the clerk of the court after a form is filled in by the judgment creditor. The court found that Haw.Rev. Stat. Section 652–1(b) was unconstitutional insofar as it allowed the issuance of *ex parte* writs of garnishment to be served on personal checking accounts belonging to judgment debtors which may or do contain funds traceable to AFDC benefits. Although the court limited its holding to the facts before it, it required that the statute henceforth incorporate a procedure similar to that in *Mitchell,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406, and *Fuentes,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, of the presentation of an affidavit setting forth facts that the funds to be garnished are not exempt funds, to be reviewed by a judicial officer, and the entitlement of notice and a quick, two working days' review of any AFDC exemption claim.

In *Simler v. Jennings,* 23 O.Op.3d 554 (S.D. Ohio 1982), a magistrate, pursuant to 28 U.S.C. § 636(b)(4) and (c)(1) held Ohio's postjudgment garnishment procedure unconstitutional. The Ohio Law set out a single system of postjudg-

By contrast, in *Brown*, 539 F.2d 1355, the Fifth Circuit, after balancing the interests of the parties, concluded that a Florida post judgment wage garnishment statute, which did not provide for prior notice or a hearing, satisfied due process. This decision was reached in part because the plaintiff was provided with an expeditious review of his claim.[12]

### A. Identification of the Interests Involved and Risk of Erroneous Deprivation

The post judgment creditor has a strong interest in prompt and inexpensive satisfaction of the debt owed by the judgment debtor. *Deary*, 534 F.Supp. at 1186. More weight is to be accorded this interest in a post judgment context than in prejudgment situations, because there is no question as to the debtor's liability. Delay or added expense to the creditor will only diminish the ultimate value of the recovery on the debt. *Finberg*, 634 F.2d at 58; *Brown*, 539 F.2d at 1365; *Betts*, 431 F.Supp. at 1376. The ability to seize swiftly monetary assets, such as bank accounts, which are easily liquidated, is in the creditor's interest since it is faster and less expensive than enforcement against other types of personal property. *Finberg*, 634 F.2d at 58; *Brown*, 539 F.2d at 1366; *Deary*, 534 F.Supp. at 1186. The creditor's fear that liquid assets held in bank accounts can quickly disappear if notice is given is real and further suggests the need for the ability to attach these funds without advance notice to the judgment debtor. *Phillips*, slip op. at 13 (Paper No. 22, Exh. A).

The debtor's interest in the uninterrupted use of his bank accounts is not insubstantial.

"A bank account may well contain the money that a person needs for food, shelter, health care, and other basic requirements of life."

ment garnishment for the various types of garnishments available to judgment creditors. A garnishment action was commenced by filing an affidavit in which it is stated that the creditor does not believe that the property sought to be attached was exempt. The order is served on the garnishee who is directed to deliver a copy to the debtor. No hearing either before or after the seizure is required. An ad hoc hearing will be provided upon request by the debtor after an answer time of 21 days is given the judgment creditor. The notice received by the debtor concerns only the actions to be taken by the garnishee, with no language informing the debtor that he may challenge the garnishment or of the possible defenses. Consequently, the court ordered that future procedures should provide, at a minimum, notice of the garnishment on the debtor, a notice explaining the defenses, a description of the procedure for asserting those defenses, and a prompt disposition of the issues.

In *Phillips v. Robinson, Inc.*, No. Civ.–81–190–BT (W.D.Okla.1983), the District Court held that Oklahoma's postjudgment garnishment statutes were unconstitutional in that notice of the garnishment proceedings was not served on the debtor, did not inform the debtor of the particular grounds or procedures for challenging the garnishment actions, and no prompt hearing was provided.

In *Harris v. Bailey*, 574 F.Supp. 966 (W.D.Va. 1983), the plaintiff Harris, a Social Security recipient, filed an action seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to invalidate the postjudgment garnishment procedures permitted by Va.Code §§ 8.01–511 to 525 (1977 & Supp.1983) as violative of the Due Process and Supremacy Clauses of the United States Constitution. After an appeal in which the Fourth Circuit held that there was a justifiable controversy despite the fact that her garnished benefits had been returned to her, the District Court on remand held that the Virginia postjudgment garnishment procedures were constitutionally deficient in that the statute provided no requirement that the notice to the judgment debtor be served in a timely manner, there was no notice of the possible exemptions available to the judgment debtor or the process for contesting the garnishment, and finally, there was no requirement of an expeditious hearing.

12. Similar to *Brown*, in *First Nat'l Bank v. Hasty*, 410 F.Supp. 482 (1976), where the defendant judgment debtor failed to demonstrate that his notice of proceedings from the garnishee defendant in accordance with the Michigan Rule had been inadequate or impaired his ability to object, there was no deprivation of due process. Judgment debtor's rights of due process were further protected by the Michigan requirement that before any writ of garnishment is issued an affidavit must be presented to the clerk of the court showing that the plaintiff is justly apprehensive of loss unless the writ is issued. The court did not consider the question of whether the notice must inform the debtor of the procedures or the defenses available to him, or the question of the timing of the hearing to be provided to him.

*Finberg,* 634 F.2d at 58. Freezing a bank account may deprive a debtor of all his income when those funds represent the total monthly benefits of the disabled, the elderly or the mother with dependent children. In contrast to situations involving the garnishment of wages where, as in *Brown,* a statute usually imposes a limit on the portion of the wages which may be frozen and obtained, the garnishment of a debtor's bank account, which may contain most of his money, can be catastrophic. The attachment of bank accounts, therefore, increases the probability that the judgment creditor may deprive debtors of all means for providing for themselves. The legitimacy of the debtor's need for at least a portion of the funds in these accounts is underscored by the legislatures' determinations that an exemption is necessary to safeguard the debtor's ability to purchase the basic necessities. *Finberg,* 634 F.2d at 58; *Deary,* 534 F.Supp. at 1186; *Betts,* 431 F.Supp. at 1375.

For the most part, the interests of the government coincide with the interests of the debtor and the creditor. The government's interests include insuring the enforcement of judgments and the use of efficient procedures to do so, maintenance of the integrity of the judicial process by preventing asset dissipation which would frustrate judicial decisions, and the provision to judgment debtors of the means to subsist and to obtain the basic necessities of life. In addition, the government's concern with minimizing the burden on its courts and other agencies must also be considered.

In the present case, the interests of the judgment creditors and judgment debtors are those recognized by courts which have previously examined these issues. The American Express Company, the C & P Telephone Company, and the Equitable Bank all had an interest in recovering effi-

ciently and quickly the debt owed them by the judgment debtors. The plaintiffs had their sole sources of income placed beyond their reach for the period of time between the issuance of the writ until their claims of exemptions were resolved by the district courts. Plaintiff Dannie, a mother of three, had her sole source of income, AFDC benefits, deposited directly in her bank account, frozen. Plaintiff Reigh had her pension and Social Security retirement benefits, directly deposited in her bank account, frozen. The Simpkins had their disability and dependent's disability funds from Social Security frozen. Each plaintiff, relying solely for sustenance on benefits which are statutorily exempt from garnishment, was deprived of those benefits until the district courts ruled on the respective motions to quash.

### B. *Notice*

The Maryland District Rules in effect when this suit was filed and as amended on October 21, 1983 contained no assurance that the judgment debtor would ever receive notice that his bank account had been attached and the funds therein frozen. M.D.R. F1 provided for service of the writ only on the garnishee, not on the debtor. While the back of the Order for Attachment, which was served on the garnishees holding the property of these plaintiffs, stated that the garnishee *should* notify the debtor, there was no *requirement* that the garnishee do so (Paper No. 13, Dannie Affidavit, Order for Attachment attached thereto; Paper No. 15, Reigh Affidavit, Order of Attachment attached thereto).

At the December 2, 1983 hearing, the defendants submitted to the court for its consideration copies of two types of forms then being used by the District Courts of Maryland in post judgment garnishment cases.[13] Defendants' Hearing Exhibit No.

**13.** At the hearing, the defendants also submitted a copy of the constable's manual, printed by the District Courts of Maryland. (Defendants' Exhibit No. 3). This manual was in effect at the time the plaintiffs in this case had their accounts frozen. Although the manual § 2.33 states that the sheriff must notify the judgment debtor that a writ has been served on his property held by a third person, this was not done for any of the plaintiffs in this case; as the manual is not strictly followed, it does not provide the judgment debtors with the due process rights they should have been provided by law.

2 is the Petition for Attachment on Judgment containing also the Writ of Attachment (hereinafter referred to as Petition/Writ). This Petition/Writ replaced the Order for Attachment form used by the Maryland District Courts to notify the garnishees of the plaintiffs' property. The Petition/Writ was printed in June of 1983. Although the new Petition/Writ stated that the debtor may claim a cumulative $3,000 exemption of any judgment as set forth in *Md. Cts. & Jud. Proc. Code Ann.* § 11–504, the Petition/Writ no longer informed the garnishee that it should mail a copy of the order to the debtor. Thus, there was still no requirement by statute or rule nor any longer a suggestion in the forms used that the garnishee inform the judgment debtor of the attachment of his or her bank account, in order to provide the judgment debtor with notice of his right to assert a claim of exemption.

Defendants' Hearing Exhibit No. 1 is a copy of the Garnishee's Confession of Assets form. This form is completed by the garnishee and it indicates the property of the judgment debtor that is held by the garnishee. Once a Confession of Assets was filed by the garnishee, the district court could enter a judgment of condemnation absolute for the assets confessed, provided that no claimant filed a pleading within thirty days after service of the writ on the garnishee. M.D.R. F4. This form, which went into use in September, 1983, contains on it a certification, to be completed by the garnishee, that a copy of the confession of assets form has been mailed to, among others, the defendant, judgment-debtor. The reverse side of the confession of assets form lists those items which are exempt from execution on judgment as provided for in *Md. Cts. & Jud. Proc. Code Ann.* § 11–504(b) & (c), and informs the judgment debtor that if he or she wishes to claim the $3,000 exemption set forth in § 11–504(b)(5), the judgment debtor may fill out and return a Motion to Elect Exemption form set forth below.

While the new M.D.R. 3–645(d) seems to require that the answer of the garnishee be served on the judgment debtor as well as the creditor, there is no requirement in the post judgment garnishment rules that a copy be received by the debtor or filed by the garnishee within the thirty-day period the judgment debtor has to assert his claim of exemptions. M.D.R. 3–645(e) and (i). With the old form, which also contained a certificate of service to the judgment debtor, (Paper No. 13, Simpkins Affidavit, Garnishee's Confession of Assets form), the Simpkins did not receive a copy of the Confession of Assets form until almost three weeks after their bank account had been frozen and the writ had been served. Thus, the possibility exists that judgment debtors will not receive a copy of the Confession of Assets form until after their time to file their defenses to the attachment has run.

Although, as the plaintiffs rightly pointed out, the law prior to July 1, 1984 did not require that the judgment debtor be given notice of anything, the new M.D.R. 3–645(d) requires that the judgment debtors be mailed a copy of the writ "[p]romptly after service upon the garnishee."

The old procedure, under the rules as they existed when this suit was filed, and as the rules were amended on October 21, 1983, was a violation of due process in that a judgment debtor was not guaranteed notice of an attachment sufficient to allow him to obtain a meaningful judicial determination of his right to an exemption of property under state and federal law.

The new rule, however, appears to the court to provide for the timing of notice to the judgment debtor in a manner sufficient to satisfy the concepts of fairness inherent in the Due Process Clause. While the timing of the notice under the new M.D.R. 3–645(d) is somewhat ambiguous in that it is required "promptly" after service upon the garnishee, this court is reluctant to conclude, in the absence of state court rulings on the meaning of that term in this context, that the notice would be deemed to be "prompt" if not sent at the first possible opportunity after service upon the garnishee was achieved.

Only if the notice is sent immediately to the judgment debtor after service upon the garnishee will the debtor have a reasonable opportunity to take action to obtain a meaningful judicial determination [14] of his rights to an exemption of the seized property.

### C. *Content of Notice*

The second result of a lack of notice from the District Courts of Maryland to the debtors, alleged by the plaintiffs, is the likelihood of ignorance on the part of judgment debtors of the exemptions which are available [15] and the process by which a claim of exemption can be made.

■■■ The notice requirement by due process must be "reasonably calculated, under all the circumstances, to ... afford [interested parties] an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Green v. Lindsey*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13-15, 98 S.Ct. 1554, 1562-1564, 56 L.Ed.2d 30 (1978) (public utilities notice to its customers of the termination of their gas and electric services failed to satisfy due process because the notices did not inform the customers of the process for contesting terminations); *Banks v. Trainor*, 525 F.2d 837 (7th Cir.1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976) (because notices did not inform recipients of factors relevant in determining net food stamp income, the plain-

tiff class could not inform caseworker of expenditures properly considered); *Holbrook v. Pitt*, 643 F.2d 1261, 1281 (7th Cir.1981) (notice to housing project tenants of their right to receive retroactive housing benefits required); *Nunez v. Boldin*, 537 F.Supp. 578 (S.D.Tex.1982) (notice of the opportunity to apply for asylum must be given). *See also Hanner*, 390 U.S. at 741, 88 S.Ct. at 1440-41 (and cases cited therein); *Nelson v. Regan*, 560 F.Supp. 1101 (D.Conn.1983); *Hill v. O'Bannon*, 554 F.Supp. 190, 195 (E.D.Pa.1982).

In *Finberg*, the Third Circuit reasoned that providing notice to the debtors of the exemptions available would "provide substantial protection to the debtor's interest in having funds available for basic necessities." *Finberg*, 634 F.2d at 62. Since knowledge of the exemptions is not widespread and the debtor's inability to consult an attorney before the freeze could cause serious problems, the court concluded that the balance of interests required that the debtor be furnished with this information and that failure to provide such information was a violation of due process. *Id.* at 62. *Accord Deary*, 534 F.Supp. at 1187.

■■■ "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Craft*, 436 U.S. at 14, 98 S.Ct. at 1563. Notice in a case such as this, where an individual's ability to obtain basic necessities is endangered, does not comport with due process when it does not advise the

14. Professor Alderman has argued that all postjudgment summary-seizure procedures should provide for notice and an opportunity to be heard before any deprivation occurs. Alderman, 65 Geo.L.J. at 23. As *Mitchell* reveals that such protections are not necessarily required in a prejudgment attachment process, this court does not believe that in a postjudgment context there is an absolute need for resolution of the claim of exemption before the initial attachment where other protections assure that the risk of a wrongful deprivation will be slight and any wrongful deprivation will be brief.

15. A partial listing of federal and Maryland exemptions available to judgment debtors is identified by the plaintiffs in Paper No. 14, Exh. B.

The benefits received by the plaintiffs in this case were exempt under 42 U.S.C. § 407 (exempts the payment of benefits available under the Social Security Act (Reigh and Simpkins), 29 U.S.C. § 1056(d)(1) (exempts ERISA pensions) (Reigh), Md.Cts. & Jud.Proc.Code Ann. §§ 11-504 (general exemption for a certain amount of cash) (Reigh and Simpkins), and Md.Ann.Code, Art. 88A, § 73 (exempts all benefits available under state public assistance programs).

A further examination of the exemptions available to debtors is set forth in two articles. *See* Vukovich, *Debtor's Exemption Rights*, 62 Geo.L.J. 779, 797-832 (1974); Glenn, *Property Exempt from Creditor's Rights of Realization*, 26 Va.L.Rev. 127, 128 (1939).

debtor of the procedure for protesting the attachment of his bank accounts or the grounds on which such an attachment could be challenged. Such information can be incorporated into the writ of attachment form from the district court with little burden on the courts.

This information is not required to be supplied by the new rules nor is it, in fact, presently supplied, the court having already determined that the Confession of Assets form to be sent to the debtor by the garnishee affords notice of only one type of exemption without a full explanation of how to obtain a hearing.

The Maryland District Rules presently, as they have in the past, deprive judgment debtors of their constitutional rights of due process as a result of the deficiency in the required content of the notice.

### D. *Opportunity for a Timely Hearing*

The third defect in the Maryland District Rules, which the plaintiffs allege existed and continues to exist, is the absence of an opportunity for a timely hearing. The plaintiffs seek to have this court determine that a hearing on the judgment debtor's motion to assert an exemption must be held within a finite number of days, a time period which will not deprive the judgment debtor of his exempt property for longer than is absolutely necessary.

The defendants contend that hearings were held on such motions in an expeditious manner under the law as it existed when this suit was filed and as the rules were amended on October 21, 1983. Rule G51, which used to require that a hearing be held on a motion to quash "forthwith," was amended on October 21, 1983 to provide that when a debtor files a motion to release property and then requests a hearing, the district court shall hold a hearing "promptly." M.D.R. G51. The new rules contain the provision that a hearing, if requested, shall be held "promptly." M.D.R. 3–643(f). The new rules do not require that a claim for exemption, if no hearing is requested, be ruled upon "promptly" or at any particular time.

The court in *Phillips* required that the hearing on the exemption application be held within ten days or less. In *Betts*, the hearing was required to take place in two working days. In *Finberg*, the court held that fifteen days' delay in holding a hearing was too long. In *Deary* and *Simler*, it was held that a hearing was required to be held as soon as possible so as not to deprive the judgment debtor of funds for longer than was necessary.

As noted earlier, the probability that an erroneous deprivation will occur when a judgment debtor's entire bank account is garnished is high, and the debtor's interest in the continued use of these funds is self-evident. Just as the withholding of utility services of water and electricity may threaten health and safety, *Craft*, 436 U.S. at 18, 98 S.Ct. at 1565, so too will the withholding of funds necessary to pay for those services and the additional basic necessities of shelter, food, and medicine. A hearing resolving the judgment debtor's claim of exemption must be quickly provided to limit the period an individual judgment debtor can be restrained from using the frozen funds, attached by an order of court. As all the courts examining this question have concluded, a prompt judicial hearing on this question in these circumstances is one which will take place within two weeks or less from the time the claim of exemption is filed. A delay longer than that period could seriously threaten the health and safety of the judgment debtor and those who depend on him for support.

While the Maryland District Rules now provide that the hearing, when requested, be held promptly, the Maryland District Rules provided that motions be heard "forthwith" when the plaintiffs in this suit filed their motions in which they asserted their claims of exemption. Under the "forthwith" standard, arguably a more demanding standard than "promptly," the claim of plaintiff Dannie was resolved in twelve days, the claim of plaintiff Reigh was resolved in two weeks, and the claim of the Simpkins was resolved in one month. As illustrated by the facts relating to the cases of these particular plaintiffs, a rule

which does not provide a particular period of time within which the motion asserting an exemption must be heard is too easily abused and provides the opportunity for constitutional deprivation.

█ As demonstrated by the reasoning of this court and others which have considered the meaning of "reasonableness" in the context of a claimed exemption by judgment debtors, a reasonable period of time in these circumstances is a short one.[16] Accordingly, this court concludes that when a hearing is requested in Maryland post judgment garnishment proceedings, that hearing must take place within two weeks of that request. If a hearing is not requested by any of the parties, then the claim of exemption must be resolved within two weeks of the date of its filing.

█ In the present case, the delay in adjudicating plaintiffs Simpkins' claim of exemption unconstitutionally deprived the Simpkins of their right to due process under the Fourteenth Amendment to the United States Constitution. Because the process due to judgment debtors, particularly the period of time within which the hearing on a claim of exemption is required to be held, was not firmly established in this district at the time the Simpkins filed

their exemption claim, this court concludes that the Clerk of the Court of Howard County is immune from any claim of damages by the Simpkins. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[17]

For the reasons stated above,[18] it is this 29th day of October, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion to Dismiss filed by the defendants be, and the same is hereby, DENIED.

2. That the Motion for Summary Judgment filed by the defendants be, and the same is hereby, DENIED.

3. That the Motion for Summary Judgment filed by the plaintiffs be, and the same is hereby, GRANTED.

4. That the Maryland District Rules regarding post judgment garnishment procedure be, and the same are hereby, DECLARED to be unconstitutional in that they do not provide for adequate notice to a judgment debtor of the claims of exemption which are available, nor do they assure resolution of a claim of exemption within a reasonable time.

**16.** In response to this court's request, the defendants have provided the court with the number of these types of writs filed during a year, as well as the number of claims of exemptions filed. The defendants have advised the court that for the period July 1982 to June 1983, there were 5,962 writs served on area financial institutions. For the period July 1 through September 19, 1983, there have been 2,703 Writs of Garnishment served. The statistics of the District Court further reflect that claims of exemption average only three or four per month. (Paper No. 29).

In considering the period of time in which the claims of exemptions must be resolved by the District Courts of Maryland, the court has considered these figures. Noting also that there are 84 District Court Judges throughout the State of Maryland, (Maryland Lawyers Manual, Vol. XVI, 1983), even if all the judgment debtors on whose accounts writs were served in the period July 1982 to June 1983 had filed claims of exemptions, each judge would have had approximately 71 claims to resolve during that year. While the court is aware that the claims will not be spread evenly throughout all the District Court judges in Maryland, and the end of the

present year may present an increase in the number of writs served, the burden imposed by a finite time period is not unbearable, even assuming that a claim of exemption is filed in every instance that a writ is served.

**17.** Officials will be held liable where they could be expected to know that certain conduct would violate statutory or constitutional rights. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739. "Because they [the District Court Clerks] could not reasonably have been expected to be aware of a constitutional right that had not yet been declared, petitioners did not act with such disregard for the established law that their conduct 'cannot reasonably be characterized as being in good faith.'" *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978), quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

**18.** The disposition of the due process claims makes it unnecessary to resolve the issue of whether the Maryland District Court Rules violate the Supremacy Clause of the United States Constitution by allowing summary attachment of property exempt under federal law.

5. That a permanent injunction restraining the Clerks of the Maryland District Courts from issuing said writs of attachment without the above-required notice will be entered in a form to be determined at a later date. Counsel are directed to confer immediately and furnish to this court within ten (10) days an agreed form of injunction.

6. That the Clerk of this Court shall mail a copy of this Memorandum and Order to counsel for the defendants and counsel for the plaintiffs.